23-6686, Herring v. Quiros et al. One moment, please. Mr. LaBru, is that right? Yes. You have two minutes for rebuttal, sir. You may proceed when you're ready. Yes. May it please the court, Lawrence LaBru, esteemed counsel. Lawrence LaBru for Mr. Carlisle Herring. To the court, there are two issues, basically, before the court. Venue and access to the court. Mr. Herring's position is that venue is proper in the Southern District of New York because his sentence expired while he was in custody at Rikers Island. Well, you say that his sentence expired, but I think your opponents are going to say otherwise. And they're going to say two things. One, he remained in custody all this time. And two, that the sentence never, in fact, was completely right, that he didn't serve the full time. And on page 6 of their brief, they say, Here, the running of Herring's Connecticut sentence was stopped between May 15, 2019, and January 3, 2020, and was stopped a second time on November 13, 2020, never to restart. What's wrong with that? Excuse me, Your Honor. Our position is the problem with that analysis is everyone agrees, including Connecticut, that originally Mr. Herring's sentence was scheduled to expire September of 2021. Okay? He was actually out on parole, and it was alleged that he committed some other crimes. He actually got arrested on a parole warrant in Florida. Okay? When he got arrested on that parole warrant, he waived extradition to Connecticut. New York City detectives were down there. They had already interviewed him. They brought him back to New York. Our position is that even though he was on parole, the state of Connecticut is correct in the sense that, pursuant to Morrissey v. Brewer, if they would have served him notice, you have violated your parole. Because you did X, Y, and Z, then his sentence would have stopped. None of that would serve. The second problem that we challenge their analysis is, even though he was on parole, okay, when his sentence expired and the state is arguing, the state of Connecticut is arguing that he was an excounder. Okay. This argument that he was an excounder is central to the court's question that was just raised about remaining in custody and sentence not served. Our position is, and we believe it's supported by the law, is that when the state of Connecticut had notice of where he was at, he was no longer an excounder. When they had notice where he was at and they could have exercised some judicial process to adjudicate him on this parole issue, he was no longer an excounder. Okay. Since they never took any steps to give him due process with regard to that parole issue, when he got to his maximum expiration date or maximum release date, which was 9 September of 2021, after any action by the state of Connecticut, which there was no action, he had completely served his time. Now, this court has reviewed- And your authority that the state of Connecticut law is that if someone violates parole because they abscond, then they are, one, not in custody anymore, and, two, their sentence ends when the end date of the sentence is completed. Your authority for that is? Well, my argument is somewhat different than what the court states. My argument is that when a person absconds, once the state knows where they're at and has a judicial method to bring that person back related to absconding or any relation related to parole, then they cease to be an excounder. And your case law for that? That- For that proposition. My proposition, I'm relying on Morrissey for the simple fact that if you have a parole violation, in order to adjudicate a person on that parole violation, they have to be- You're relying on? Morrissey. Morrissey v. Brewer. Okay. Okay. In order to adjudicate them on that parole violation, they have to be given notice. I'm further relying on a line of post-release supervision cases, the early case and Hassell v. Fisher, where this court, some years back, adjudicated a series of cases related to post-release supervision. In those cases, the court made clear, and that's the Hassell v. Fisher and early versus Murray and a series of other cases- So, just to be clear, you're relying on Morrissey v. Brewer, the U.S. Supreme Court case of 1972, for your proposition? I'm relying on- That Connecticut law says, if you are on parole and you abscond, and your sentence date, you've got five more years hanging over your head on your sentence, and those five years pass because you wind up getting incarcerated elsewhere, your sentence is over in Connecticut. That's your proposition, right? Not essentially. My proposition is that, if you abscond, and the cases that I'm relying on is Morrissey v. Calhoun v. New York State Division of Parole Officers. So, I'm asking for a Connecticut case, sir, because we're dealing with Connecticut. Why would your client not be in the custody of Connecticut, not have to respond to his violation of parole in Connecticut? Do you have a Connecticut case? I don't have a Connecticut case because I'm relying on constitutional principles that would supersede Connecticut law, and my argument is that, once you know where someone's at, the state could not engage in willful blindness and say, okay, well, your parole has been extended, okay? Once they knew where he was at, they had some obligation to give him notice that, okay, you have violated parole, and then take some type of steps, whatever steps that they choose to take. And then your next step would be that, if they didn't give him notice, then the tolling that would otherwise have taken place didn't take place once the failure to give notice occurred. Correct. The court is correct. That's essentially what I'm arguing. When you know where the person—now, if they did not know where he was at, then that's a different issue. In his sentence, I would think, even though I'm not an expert on Connecticut law, and I'm not going to opine on it because I'm not licensed in Connecticut, but just from a constitutional perspective, if they did not know where he was at, then that's a different situation because the counterargument would be, you can't be on parole and absent yourself from the process and claim that your parole is tolled. So can I briefly finish? You may finish, and then you do have two minutes for rebuttal, but go ahead and finish up the point. Okay, briefly, our position is that the venue is in the Bronx. It's in this venue because he was in Rikers Island. He should have access to the courts because he's not on parole, and to extend his sentence violates double jeopardy in due process. Thank you. Thank you, Mr. LaGrube. You do have two minutes for rebuttal. We'll hear from Mr. Moore. Good morning. My name is Leland Moore. I represent the defendant's appellees. May it please the court, this court should affirm the district court's ruling dismissing this case because this case is clearly barred by Pricer v. Rodriguez. The plaintiff is in custody, and even if construed as a petition for writ habeas corpus, the plaintiff has not met 2254's exhaustion requirement. I'd like to address a couple of things that the plaintiff said in his argument regarding absconders. I know he pointed out that the sentence expiration date was September of 2021. However, the record below is very clear that plaintiff was declared an absconder by the state of Connecticut in November of 2020. So under Connecticut law, under cases like Asherman v. Meacham and Parham v. Warden, his time stopped running once he was declared an absconder. I suppose the question is, can he be declared an absconder if the state knows where he is? It seems to be the thrust of the argument. As a constitutional matter, Mr. LeBrew says essentially that he can't be. I'm not sure Morrissey or any of the other cases support that proposition, but you tell me. So, Your Honor, I know of no authority that stands for the proposition that just because the state knows where an absconder is, they no longer should treat him as an absconder. Logically, that would mean that anyone who's fled and is a fugitive and the state discovers where they are has to say, we no longer can have interest in this case, and you're free to go. And that would be an absurd result. Furthermore, there is a Connecticut case on point. I cite to it in my brief. It's Parham v. Warden. It's a case where a Connecticut parolee absconded from parole, and while they are an absconder living still in Connecticut, their sentence max date ran. And unbeknownst to them, prior to that sentence max date running, the state of Connecticut had issued a parole violator warrant, basically wanting them as an absconder. The person was arrested by the police in, I think, Stanford, and filed a habeas alleging that they were deprived of due process because they didn't know that this warrant was out there. So to his due process claims, this case is entirely to the contrary, because the Connecticut Supreme Court said there's no due process violation just because the plaintiff doesn't know the absconder warrant is out there, because Connecticut statute 54-128 clearly indicates that once returned to custody, a parolee is obligated to serve the remainder of their unexpired time. So that case is in opposite. As a factual matter, did the state know where he was when he was declared an absconder? Based on the pleadings, it looks like they knew, and the attachments to the pleadings, it looks like the state became aware in May of, I believe, 2021 when he was picked up in New York. So they had declared him absconder in November of 2020, but in May, which is still prior to that sentence expiration date, they found out where he was and lodged a detainer shortly thereafter, the parole violator warrant as a detainer. And to be clear, under Connecticut law, if someone on parole is still in the custody of the Department of Corrections, they're just not incarcerated, but they're still under the custody of the Department of Corrections, correct? Yes, Your Honor. They're not in actual physical custody, but they are in custody. They're serving their term of incarceration in the state of Connecticut. And unlike probation violation, a parole violation is an automatic. The state can automatically pick somebody up and put them back in jail to continue to serve their sentence, correct? Yes, Your Honor, although there would be due process hearings once they remand them to actual physical custody. But it's not like a violation of probation hearing. No, it's a different process, Your Honor. So are you aware of Connecticut case law that says if somebody leaves the jurisdiction while an investigation is pending, but they're not aware that they're under investigation or that a warrant is going to come down, then the state has an obligation to pursue them if they didn't abscond, intentionally leave the jurisdiction. But that's not the case here, correct?  So if someone is under investigation, they're not serving a sentence. They're not incarcerated on parole. They're just out in the community. There's an investigation. They leave the jurisdiction. They leave the state. And then a warrant comes down, and the state finds out where they may be. They have an obligation to try to search the person. That would be a different situation, correct? Yes, Your Honor. There's Connecticut law on that. That's not the case here. That is not the case here, Your Honor. There's also a Supreme Court case, which is contrary. I know the plaintiff made a claim that argued that wasn't given due process. There's a case from the Supreme Court called Moody v. Daggett, which essentially addresses the issue of is somebody entitled to an immediate parole revocation hearing once a parole-violated warrant has been lodged or issued but not executed. And in that case, basically the Supreme Court said, no, your Morrissey rights don't kick in until you're in custody and that warrant has been executed. So what's anticipated to occur here? One day will he be afforded due process on this declaration that he was an absconder? So, Your Honor, under Connecticut law, in 2033, once his New York or earlier, I'm not an expert in New York sentences at all, but once his New York sentence has expired, he'll be picked up by Connecticut authorities, brought back to Connecticut, and he will have, under Connecticut statutes, I think it's 54-127, a parole revocation hearing. And the Connecticut Parole Board will determine whether he has violated the conditions of parole and what sanction he's to serve. And in the meantime, if we were to affirm, the judgment below was dismissal without prejudice. So he could file a habeas, a state habeas in Connecticut under your view? Yes, Your Honor. So this is a, because he's seeking immediate release from parole as relief, this is a classic habeas case, and habeas is the remedy. He can file a petition for a writ of habeas corpus in Connecticut State Court. Now? Now, right now. Because he's in custody under the detainer. Yes. In cases like United States, XREL Meadows versus New York, which is a Second Circuit case, which is completely analogous to the situation where you had a parole absconder, who absconded from New York and was in Georgia, in custody in Georgia. State of New York filed a parole violator warrant as a detainer, and this circuit concluded that that person was in custody for federal habeas purposes. So this court should affirm the district court's decision for three reasons. Venue is not proper in the Southern District of New York. Clearly the acts or omissions that gave rise to plaintiff's claims were made by Connecticut officials in the state of Connecticut, applying Connecticut's sentencing law, Pricer v. Rodriguez, and its progeny clearly bar a 1983 action such as this that seeks relief, which would result in immediate release from another state sentence or a sentence. And even as the lower court looked at this and said, well, even construing this as a habeas petition, a federal habeas petition, there's no indication in the record whatsoever that plaintiff has attempted to exhaust his remedies in the courts of the state of Connecticut. I know that the plaintiff attached a grievance within the New York City Department of Correction system. However, I believe that incorrectly conflates the Prison Litigation Reform Act's exhaustion requirements with Section 2254's exhaustion requirements. Under Section 2254, as you all likely know, the requirement is that he seek relief in the courts of the state of Connecticut. So this case is a classic example of habeas relief, and plaintiff, if he wants to pursue this, should file a habeas petition in the state of Connecticut. I have nothing further. You should affirm. Thank you. Thank you, Mr. Moore. Mr. LaBrie, you have two minutes for rebuttal. Briefly, our position is that the facts and the case law as stated by the state of Connecticut is different from the facts in this case. In this case, the state of Connecticut was in active participation in the prosecution of Mr. Herring in the New York case. They did an identification with the police. They testified in the grand jury. They testified at a pretrial hearing. They testified at his trial. They were the only witness that formed the basis of his conviction at trial. His conviction in Connecticut. His conviction in New York. But you're challenging his Connecticut case. I'm challenging Connecticut, but the reason I'm bringing up New York is because New York shows a basis of knowledge. And our position is that the state of Connecticut cannot have a parole officer come into New York State for two years and confirm in a criminal case involving a defendant that's a parolee in Connecticut and then allege that he's an absconder and we don't know where he's at, so his sentence should continue. Our position is that fundamental fairness and due process, once they knew where he was at, and there's no doubt they knew where he was at because he testified in the grand jury. He testified at trial. He did an identification procedure with the district attorney's office. He was instrumental in the arrest, and that was all alleged in the complaint. So there's no way you can logically say that we believe that Connecticut can logically say that he's an absconder. So essentially what they're doing is saying, we're going to sit back and in effect engage in a process called willful blindness and we don't know where he's at, he's an absconder, and then after you get finished with your sentence, we're going to come back and give you more time. The proper process would have been to brought him back to be handled on the parole issue, and when they didn't do that and they waited until his sentence expired, everything was a nullity. He was off parole, and that's how come we filed a 1983 action where there's no exhaustion requirement. We believe the lower court should be reversed, Your Honor. Thank you, Mr. LaBrue. Thank you, Mr. Counsel.